IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

OPTIMUM TECHNOLOGIES, INC.,

    Plaintiff,

      v.

HENKEL CONSUMER
ADHESIVES, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:04-CV-1082-TWT

OPINION AND ORDER

This is an action for trademark infringement.  It is before the Court on the
Defendant's Renewed Motion for Judgment as a Matter of Law [Doc. 272].  For the
reasons set forth below, the Defendant's motion is GRANTED.

## I.  BACKGROUND

Plaintiff Optimum Technologies, Inc. ("Optimum") is a family-owned company
based in Cartersville, Georgia.  It manufactures and sells a variety of flooring-related
products.  Optimum's main revenue producing product is the Lok-Lift Rug Gripper,
a product that can be applied in strips to the back of rugs and mats to secure them in
place and prevent slippage on hard surfaces and carpets.  Optimum is the registered
owner of the LOK-LIFT mark.  Defendant Henkel Consumer Adhesives, Inc.

("Henkel") develops and distributes consumer goods.  In late 1993, Optimum and Henkel entered into a business relationship, pursuant to which Henkel would distribute Lok-Lift Rug Gripper to retail accounts.  In January 1994, Henkel began distributing Lok-Lift Rug Gripper.  For approximately nine years, Henkel purchased Lok-Lift Rug Gripper from Optimum and then sold the product to various retailers. During this time, Henkel was authorized to use Optimum's trademarks.

In 1998, Henkel began the process of developing a foam-backed latex material that would hold rugs and mats in place on floors.  Henkel viewed the product – ultimately called Hold-It For Rugs – as a potential replacement for Lok-Lift Rug Gripper.  Throughout the development process of Hold-It For Rugs, Henkel continued to purchase Lok-Lift Rug Gripper from Optimum for distribution to retailers.  In December 2002, Henkel launched its new product and began shipping Hold-It For Rugs to its retailer customers.  Following the launch of Hold-It For Rugs, Henkel terminated the distributorship relationship with Optimum.  Nevertheless, Henkel's web sites continued to contain a couple of references to the Lok-Lift Rug Gripper product, including referring to Hold-It For Rugs as part of the Lok-Lift product line. In addition, if consumers searched the Henkel site for retailers selling Lok-Lift Rug Gripper, they were directed to retailers selling Hold-It For Rugs.

In April 2004, Optimum filed suit against Henkel, asserting claims for trademark infringement, trade dress infringement, unfair competition, deceptive trade practices, breach of confidential relationship, breach of fiduciary duty, fraud, fraudulent concealment, and negligent misrepresentation.  Henkel moved for summary judgment.  The Court granted summary judgment on all of the claims, except the trademark infringement, unfair competition, and deceptive trade practices claims arising out of the use of the LOK-LIFT mark on Henkel's web sites.  The Court held that issues of fact remained as to whether that particular use of the mark created a likelihood of confusion.  These claims were tried before a jury in February 2006.  On February 13, 2006, the Court declared a mistrial after the jury was unable to reach a verdict and the parties were unable to agree upon a less-than unanimous verdict.

During the course of the trial, Henkel made two motions for judgment as a matter of law on Optimum's claims.  The first was made following the close of Optimum's case, and the second was prior to the submission of the case to the jury. (T. Tr. at 487-96, 583.)  The Court denied Henkel's motion as to the trademark infringement and unfair competition claims but granted it as to the deceptive trade practices claim.  (T. Tr. at 496, 583.)  Pursuant to Rule 50(b)(2)(B), Henkel renews its motion for judgment as a matter of law on the issues of trademark infringement and unfair competition liability and damages.

## II.  <u>JUDGMENT AS A MATTER OF LAW STANDARD</u>

Rule 50(b) of the Federal Rules of Civil Procedure governs the renewal of a motion for judgment as a matter of law.  Where a court does not grant a motion for judgment as a matter of law made at the close of evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal issues raised by the motion.  Fed. R. Civ. P. 50(b). Judgment as a matter of law is only appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  Fed. R. Civ. P. 50(a).  Under Rule 50, when a motion for judgment of a matter of law is denied after the close of all evidence and the jury is unable to reach a verdict, the court may direct the entry of judgment as a matter of law or may order a new trial.  Fed. R. Civ. P. 50(b)(2).  In addressing a motion for judgment as a matter of law, the Court reviews all of the evidence in the record and draws all factual inferences in favor of the nonmoving party.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000); <u>Cleveland v. Home Shopping Network, Inc.</u>, 369 F.3d 1189, 1192-93 (11th Cir. 2004).  The Court is not permitted to make credibility determinations or weigh the evidence because both functions remain within the province of the jury.  <u>Reeves</u>, 530 U.S. at 150; <u>Cleveland</u>, 369 F.3d at 1193.  If substantial conflicting evidence exists in the record, the Court shall not grant judgment as a matter of law.  However, the "non-movant must put forth more

than a mere scintilla of evidence suggesting that reasonable minds could reach differing verdicts." Abel v. Dubberly, 210 F.3d 1334, 1337 (11th Cir. 2000); see also Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997).

## III.  DISCUSSION

Henkel moves for judgment as a matter of law as to both liability and damages for trademark infringement and unfair competition.[1]  Because I find the issue of damages to be dispositive, I will limit the discussion to that issue.  The Lanham Act provides that a successful plaintiff in a trademark infringement action may recover: (1) the defendant's profits; (2) any damages sustained by the plaintiff; and (3) the cost of the action.  15 U.S.C. § 1117; Ramada Inns, Inc. v. Gadsden Motel Co., 804 F.2d 1562, 1564 (11th Cir. 1986).  Recovery may be cumulative.  Thus, the Court may award a successful plaintiff both its actual damages and the defendant's profits. Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1182 (11th Cir. 1994).  However, there are different standards for the awarding of each.  Id.  At trial, Optimum claimed damages in the form of lost profits, lost  goodwill, and corrective advertising. Additionally, Optimum requested an award of Henkel's profits from allegedly

---

[1]The trademark infringement and unfair competition claims arise out of the same allegedly infringing conduct and are both subject to the same liability and damages analyses.  See Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 258-59 (5th Cir. 1980).

infringing sales.  Henkel moves for judgment as a matter of law on the basis that Optimum failed to present any evidence of damages caused by the alleged infringing use of the LOK-LIFT trademark on Henkel's web sites.

      A.    <u>Actual Damages</u>

In order to recover damages, a plaintiff must show that it suffered actual damage.  <u>Babbit Elecs., Inc.</u>, 38 F.3d at 1182.  The plaintiff must prove both the existence of damages and that the loss was caused by the defendant's actions. <u>Playboy Enters., Inc. v. P.K. Sorren Export Co. Inc. of Fla.</u>, 546 F. Supp. 987, 998 (S.D. Fla. 1982) (<u>citing</u> <u>Obear-Nester Glass Co. v. United Drug Co.</u>, 149 F.2d 671, 674 (8th Cir. 1945)); <u>see also</u> <u>Ramada Inns, Inc.</u>, 804 F.2d at 1565 (recovery may be permitted for all injuries proximately resulting from infringer's wrongful acts). Furthermore, the basis for recovery of actual damages must be demonstrated with specificity.  <u>St. Charles Mfg. Co. v. Mercer</u>, 737 F.2d 891, 893 (11th Cir. 1983); <u>see also</u> <u>Computer Access Tech. Corp. v. Catalyst Enters., Inc.</u>, 273 F. Supp. 2d 1063, 1076 (N.D. Cal. 2003) ("Trademark remedies are guided by tort law principles and so a reasonable basis for computation must exist."); <u>Vuitton Et Fils, S.A. v. Crown Handbags</u>, 492 F. Supp. 1071, 1077 (S.D.N.Y. 1979) ("[P]laintiff must demonstrate the basis for his recovery with specificity, thereby showing that injury . . . actually occurred.").

In support of its claim for damages, Optimum presented the expert testimony of Daniel Cenatempo.   Henkel contends that, Cenatempo's testimony actually established that any damages due to the alleged infringing use of the Plaintiff's mark on the web sites were purely speculative.   Moreover, Henkel argues that Cenatempo's testimony was unreliable and not based on the facts of the case and, therefore, should not be considered as evidence of damages.   Henkel filed a timely pretrial motion to exclude the opinions and testimony of Cenatempo pursuant to Rule 702 of the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).   On the eve of trial, the Court denied the motion without discussion.   (Order, Feb. 3, 2006.)   During the trial, Henkel again objected to and moved to strike Cenatempo's testimony.   (T. Tr. at 441-45.)   At that time, the Court noted the difficulties associated with making a Daubert determination, particularly given the absence of any articulable principle by which to make the decision.   However, in light of the fact that the rejection of expert testimony is to be the exception rather than the rule, the Court denied the motion.   (T. Tr. at 446-47.)   Nevertheless, after hearing the testimony and review of the entire record, the Court finds that exclusion of Cenatempo's testimony is warranted under the standards set forth in Daubert.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Thus, expert testimony is admissible only if: (1) the expert is qualified to testify competently on the topic at issue; (2) the methodology used by the expert is sufficiently reliable; and (3) the testimony will assist the trier of fact. Daubert, 509 U.S. at 589; Club Car, Inc. v. Club Car (Quebec) Import, Inc., 362 F.3d 775, 780 (11th Cir. 2004).  The requirements of Daubert apply with equal force to all experts, including nonscientific experts. Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).  The burden of proving each of the three Daubert and Rule 702 elements rests on the party offering the expert.  Rink v. Cheminova, Inc., 400 F.3d 1286, 1292 (11th Cir. 2005).  In ruling on admissibility, the district judge serves as the "gatekeeper" whose "role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1311-12 (11th Cir. 1999); see Daubert, 509 U.S. at 589 & n.7 (trial judge, as gatekeeper, acts to ensure that expert testimony is relevant and reliable).  The "gatekeeping inquiry

must be 'tied to the facts' of a particular 'case.'" <u>Kumho Tire. Co.</u>, 526 U.S. at 150 (<u>quoting</u> <u>Daubert</u>, 509 U.S. at 591).

Although the Court finds that Cenatempo was qualified to testify on the issue of damages, his testimony does not satisfy the third requirement of <u>Daubert</u> and Rule 702.  The final element of admissibility is an appropriate fit between the expert's opinion and the facts of the case.  <u>See</u> <u>Daubert</u>, 509 U.S. at 591 (requirement that testimony "assist the trier of fact to understand the evidence or to determine a fact in issue . . . goes primarily to relevance").  To be relevant, expert testimony must be "sufficiently tied to the facts of the case." <u>United States v. Downing</u>, 753 F.2d 1224, 1242 (3d Cir. 1985), <u>quoted in</u> <u>Daubert</u>, 509 U.S. at 591.  In other words, the evidence must have a "valid . . . connection to the disputed facts in the case" and "logically advance[] a material aspect of the proposing party's case." <u>Allison</u>, 184 F.3d at 1312 (citations omitted); <u>see</u> <u>Daubert</u>, 509 U.S. at 591 ("[S]cientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes . . . Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.").  This relevance consideration is often referred to as "fit." <u>Daubert</u>, 509 U.S. at 591.  There is no "fit" where "there is simply too great an analytical gap between the data and the opinion proffered." <u>General Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997).

It is apparent from his testimony that Mr. Cenatempo based his damages analysis and opinions to a large degree on the existence of claims that had been dismissed prior to trial.  During the trial, Mr. Cenatempo conceded that the report upon which he based his testimony was prepared in the early stages of this litigation, at a time when the case included various claims in addition to the trademark infringement claim associated with Henkel's web sites.  (T. Tr. at 340, 350-51.) Specifically, Cenatempo's damages analysis was based on assuming the validity of the following claims: (1) breach of confidential duty; (2) breach of fiduciary duty; (3) fraud; (4) fraudulent concealment; (5) negligent misrepresentation; (6) trademark infringement; (7) trade dress infringement; (8) unfair competition; and (9) deceptive trade practices.  (T. Tr. at 352-53.)  However, as noted above, the Court dismissed the majority of Optimum's claims at summary judgment, the only claims remaining being those for trademark infringement and unfair competition arising out of the use of the LOK-LIFT mark on the web sites.[2]  Nevertheless, Cenatempo's report and trial testimony concluded that all of the alleged violations, taken together and without regard to whether the claims had been dismissed, were the cause of Optimum's

---

[2]The claim for deceptive trade practices also remained.  However, under the Georgia Uniform Deceptive Trade Practices Act, injunctive relief is the only remedy available for such a violation.  See O.C.G.A. § 10-1-373(a).  Thus, Mr. Cenatempo did not base his damages analysis on that claim.  (See T. Tr. at 353-54.)

alleged damages.  (T. Tr. at 356-57, 373-74.)  Furthermore, Cenatempo testified that the alleged breach of confidential relationship, one of the previously dismissed claims, was the essence of the loss of the joint retail accounts and lost goodwill, two significant categories of damages included in his report.  (T. Tr. at 371.)  In addition, Cenatempo assumed in calculating Optimum's damages that the alleged trademark infringement, including other alleged improper uses beyond the web sites, was ongoing.  However, Cenatempo acknowledged at trial that the alleged infringing use on the web sites is not ongoing and, in fact, ceased prior to the other alleged infringing uses.  (T. Tr. at 368.)  Because "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful,"  Daubert, 509 U.S. at 591, the relevance of Cenatempo's opinions is clearly called into question.  See Nebraska Plastics, Inc. v. Holland Colors Ams., Inc., 408 F.3d 410, 416 (8th Cir. 2005) ("[I]f the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded.").

Despite the fact that the Court dismissed the majority of claims upon which Cenatempo based his report, Cenatempo did not revisit his analyses or conclusions. Moreover, he never attempted to associate the alleged damages with any particular claim.  Rather, he testified at trial as follows:

> I didn't think in this case, because there was so many things going on at
> the same time, that I could reliably separate out how much of the damage

> was from the confusion-type charges, like infringement-related charges,
> versus how much were from unfair competition and the other acts.  I
> didn't think with the information, the facts that we had, that I could
> reliably do that.

(T. Tr. at 581.)  Notably, this admission was made after the Court denied the

Defendant's renewed Daubert motion at trial.  The inability or failure to allocate

damages between legal and actionable conduct highlights the fact that Cenatempo's

testimony would not assist the trier of fact.  See Williamson Oil Co., Inc. v. Philip

Morris USA, 346 F.3d 1287, 1323 (11th Cir. 2003) ("[Expert] did not differentiate

between legal and illegal pricing behavior, and instead simply grouped both of these

phenomena under the umbrella of illegal, collusive price fixing.  This testimony could

not have aided the trier of fact to determine whether appellees' behavior was or was

not legal, and the district court properly excluded it [under Daubert]."); Computer

Access Tech. Corp., 273 F. Supp. 2d at 1076 (damages not proven with reasonable

certainty, and therefore not recoverable, where plaintiff failed to distinguish between

damages caused by trademark infringement as opposed to lawful conduct).  Moreover,

Cenatempo made no mention of Henkel's web sites, or even the Internet in general,

in his report nor did he relate any of Optimum's alleged damages directly or

specifically to the use of the mark on the web sites.  (See T. Tr. at 340-44, 373.)  The

Court is not required "to admit opinion evidence that is connected to existing data

only by the *ipse dixit* of the expert."  General Elec. Co., 522 U.S. at 146.  Because

Cenatempo based his testimony on excluded facts and claims, there is too great an analytical gap between the relevant facts and his opinions as to damages. See id. As such, his testimony lacks the "fit" required for admissibility under Daubert and is properly excluded. See Rink, 400 F.3d at 1292-94 (trial court properly excluded expert whose opinions were based on data previously found to be unreliable); Allison, 184 F.3d at 1320 (expert excluded on relevance grounds because two other experts which were crucial to the expert's relevance were excluded); Finestone v. Florida Power & Light Co., No. 03-14040-CIV, 2006 WL 267330, at *13 (S.D. Fla. Jan. 6, 2006) (expert opinion based on evidence excluded by court did not fit the admissible evidence in the case and could not support plaintiff's summary judgment burden). Absent Cenatempo's testimony, Optimum produced no evidence of damages caused by the use of the LOK-LIFT mark on Henkel's web sites. Thus, there is no legally sufficient evidentiary basis for a reasonable jury to find for Optimum on the issue of damages, and judgment as a matter of law in Henkel's favor is warranted.

      B.    Accounting for Profits

      The Court's determination that Optimum did not present any admissible evidence of actual damages does not foreclose Optimum's ability to receive other monetary relief. A plaintiff need not demonstrate actual damages in order to obtain an accounting for profits. See Burger King Corp. v. Mason, 855 F.2d 779, 781 (11th Cir.

1988).  The Lanham Act allows the district court discretion in determining the proper relief due a successful plaintiff, including whether an accounting for profits is justified in light of the circumstances of the case.  <u>See</u> 15 U.S.C. § 1117(a); <u>Mason</u>, 855 F.2d at 781; <u>see also</u> <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1405 (9th Cir. 1993) (accounting of profits is not automatic and should be granted in light of equitable considerations).  The Eleventh Circuit has determined that an accounting for profits is appropriate where: (1) the defendant's conduct is a deliberate and willful violation; (2) the infringer is unjustly enriched; or (3) the sanction is necessary for future deterrence.  <u>Howard Johnson Co., Inc. v. Khimani</u>, 892 F.2d 1512, 1521 (11th Cir. 1990) (citing <u>Maltina Corp. v. Cawy Bottling Co., Inc.</u>, 613 F.2d 582, 584-85 (5th Cir. 1980)[3]); <u>see also</u> <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1322 (11th Cir. 1999) (award of lost profits justified by either need for future deterrence or defendant's willful and deliberate conduct).  Accordingly, although a showing of willful infringement or bad faith is grounds for recovering profits, such a showing of culpability is not a prerequisite to recovery, provided the plaintiff shows that the defendant is "purposely using the trademark."  <u>Mason</u>, 855 F.2d at 781 ("Nor is an award of profits based on either unjust enrichment or deterrence dependent upon a

---

[3]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

higher showing of culpability on the part of defendant, who is purposely using the trademark."); see Gold Kist Inc. v. ConAgra, Inc., 708 F. Supp. 1291, 1304 (N.D. Ga. 1989) ("[T]he Eleventh Circuit does not require a higher showing of culpability, e.g., bad faith, malice, etc., in order to recover profits."); see also Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 174-75 (3d Cir. 2005) (willfulness is an important equitable factor but not a prerequisite to an award of profits); Quick Techs., Inc. v. Sage Group PLC, 313 F.3d 338, 349 (5th Cir. 2002) (same).

Optimum argues that it presented evidence sufficient to warrant recovery of Henkel's profits. The Court disagrees. Willfulness is evidenced when the defendant is "knowingly and deliberately cashing in upon the good will" of the trademark owner. See Mason, 855 F.2d at 781; see also Western Diversified Servs., Inc. v. Hyundai Motor Am., Inc., 427 F.3d 1269, 1273-74 (10th Cir. 2005) ("[T]o support an award of profits under the Lanham Act in the absence of actual damages, a plaintiff must ordinarily show that the defendant intended to benefit from the goodwill or reputation of the trademark holder."). Here, Optimum failed to present sufficient evidence from which a reasonable jury could find that Henkel deliberately or willfully infringed the LOK-LIFT mark through its de minimus use of the mark on the web sites. Rather, the evidence presented at trial shows that the use of the mark on the web sites was

unintentional and that the references to LOK-LIFT were removed after they were discovered by Henkel.

Prior to dissolution of the distributorship relationship between Henkel and Optimum, Henkel was authorized to use the LOK-LIFT mark.  After Henkel began selling Hold-It For Rugs and terminated its relationship with Optimum, Henkel took steps to update its web sites.   Michelle Heffner, Henkel's Digital Marketing Communications Manager, was  the sole person in charge of managing Henkel's web sites.  Heffner testified that she was notified of the impending change from Lok-Lift Rug Gripper to Hold-It For Rugs and was instructed to make the appropriate changes to the web sites.  According to Heffner, she updated the web sites' product catalogue as soon as was possible to reflect the product change.  (T. Tr. at 509-12.)  However, on two occasions, Heffner learned that references to Lok-Lift Rug Gripper remained on a few web pages.  Both times, Heffner immediately removed the mark and took steps to ensure that there were no other references to Lok-Lift Rug Gripper.  (T. Tr. at 512-15.)  Heffner was notified of and removed the last references in August of 2004.  The two sites on which the mark appeared at that time, the Material Safety Data Sheet ("MSDS") and "Where To Buy" pages, contained information generated from external sources.  The MSDS information is provided by a link to a separate web site and, thus, Heffner did not discover the reference when she conducted her previous

search to locate and eliminate any mention of LOK-LIFT.  (T. Tr. at 515-16.) Additionally, the information contained on the "Where To Buy" page comes directly from retailer point-of-sale data.  This information is not controlled by nor can it be altered by Henkel.  Therefore, in an effort to prevent the mark from inadvertently appearing, Heffner installed a filter to filter out the LOK-LIFT and Rug Gripper terms from the retailer-provided data.  (T. Tr. at 521-23.)

Optimum did not present any evidence to contradict or call into question Heffner's testimony.  Nor is there any evidence, beyond Optimum's unsupported speculation, that the appearance of the LOK-LIFT mark on Henkel's web sites was anything but inadvertent.  As such, a reasonable jury could not infer from the evidence presented that Henkel knowingly and deliberately intended to cash in on the good will associated with Optimum's trademark.  See Mason, 855 F.2d at 781; see also Lindy Pen Co., 982 F.2d at 1406 ("[T]his court has cautioned that an accounting is proper only where the defendant is attempting to gain the value of an established name of another.") (internal punctuation omitted).

Optimum likewise failed to present evidence sufficient to establish that an accounting of profits is justified under a theory of deterrence or unjust enrichment. As discussed, Optimum did not offer any evidence that Henkel purposely used the LOK-LIFT mark.  See Mason, 855 F.2d at 781.  The evidence instead shows that each

time Henkel learned that Optimum's mark reappeared on its web sites, it acted immediately to remove the mark.  There is no evidence that the LOK-LIFT mark currently appears on any of Henkel's web sites.  Thus, awarding profits under the deterrence rationale is not justified.

An award of profits based on unjust enrichment would be appropriate if Henkel's sales of Hold-It For Rugs were attributable to its alleged infringing use of the Optimum mark on the web sites.  See Burndy Corp. v. Teledyne Indus., Inc., 748 F.2d 767, 772 (2d Cir. 1984); Rainbow Play Sys., Inc. v. GroundScape Techs., LLC, 364 F. Supp. 2d 1026, 1036 (D. Minn. 2005).  The burden is on Optimum to prove this connection by pointing to evidence of actual consumer confusion.  Burndy Corp., 748 F.2d at 772; see George Basch Co., Inc. v. Blue Coral, Inc., 968 F.2d 1532, 1538 (2d Cir. 1992) ("[I]t follows that a profits award, premised upon a theory of unjust enrichment, requires a showing of actual consumer confusion--or at least proof of deceptive intent so as to raise the rebuttable presumption of consumer confusion."); Gold Kist Inc., 708 F. Supp. at 1304 (no accounting of profits where there was no evidence of actual confusion).  Optimum failed to present any  evidence from which a reasonable jury could find consumer confusion was caused by the LOK-LIFT mark on the web sites.  Optimum points only to testimony from its employees that Optimum received  some  consumer  complaints  that  indicated  confusion  regarding  the

relationship between Hold-It For Rugs and Lok-Lift Rug Gripper.  However, there is a complete absence of evidence that these consumers were confused as a result of the LOK-LIFT mark appearing on Henkel's web sites.  Absent evidence of actual confusion, Optimum has not established the causal link necessary to prove unjust enrichment.  Thus, the Court finds no basis for granting Optimum an award of Henkel's profits under any of the three equitable theories.

It is undisputed that the LOK-LIFT trademark no longer appears on any of Henkel's web sites.  The Court previously held that Optimum did not present any evidence at trial that there is an additional need for injunctive relief in this case.[4]  (T. Tr. at 496.)  As detailed in the Court's discussion here, Optimum failed at trial to present any admissible evidence of damages and is likewise not entitled to recover Henkel's profits.  Under these circumstances, the Court need not address the remaining issue of liability.  Henkel is entitled to judgment as a matter of law on Optimum's trademark infringement and unfair competition claims.

IV.  CONCLUSION

---

[4]Additionally, it appears that Optimum withdrew its claim for injunctive relief prior to trial.  (See T. Tr. 491.)

For the reasons set forth above, the Defendant's Renewed Motion for Judgment as a Matter of Law [Doc. 272] is GRANTED.  The Clerk is directed to enter judgment in favor of the Defendant.

SO ORDERED, this 14 day of June, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge